DJW/1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**MID-CONTINENT CASUALTY**
**COMPANY,**

        **Plaintiff,**      Civil Action

v.              No. 09-2066-EFM-DJW

**GREATER MIDWEST**
**BUILDERS, LTD., et al.,**

        **Defendants.**

## **MEMORANDUM AND ORDER**

Pending before the Court are a Motion to Stay (doc. 23) and Motion to Amend the Scheduling Order (doc. 32) filed by Defendants Greater Midwest Builders, LTD ("GMB") and Dan Barnard ("Barnard"). GMB and Barnard (collectively "Movants") seek to amend the Scheduling Order in the event the requested stay is not granted. For the reasons set forth below, the Court grants the Motion to Stay and finds the Motion to Amend the Scheduling Order moot.

**I. Motion to Stay**

Movants request that the Court stay this action pending resolution of an underlying lawsuit filed in the District Court of Johnson County, Kansas, captioned *The Village at Deer Creek Homeowners Association, Inc., et al. v. Greater Midwest Builders, LTD, et al.*, Case No. 07-CV-10282 ("Underlying Lawsuit"). Defendant Village at Deer Creek Homeowners Association, Inc. (the "HOA") has responded to the Motion to Stay, stating that it agrees that a stay is appropriate for

the reasons set forth in the motion and supporting memorandum.[1]  Plaintiff Mid-Continent Casualty Company ("Mid-Continent") opposes the request for stay.

**A.    Nature of the Matter Before the Court**

This is an action for declaratory judgment in which Mid-Continent seeks a declaration that it has no duty to defend and indemnify GMB and Barnard under a general liability policy ("the Policy") for any claims brought against them in the Underlying Lawsuit.  Mid-Continent also seeks a declaration that it has no obligation to GMB, Barnard, or the HOA.  In the Underlying Lawsuit, the HOA and its President, along with 80 individual homeowners, allege that GMB and Barnard designed, constructed, and sold townhomes in the Village at Deer Creek subdivision and that those townhomes have construction defects, including water intrusion and mold growth.  The plaintiffs assert claims for negligence, strict liability, breach of warranty, misrepresentation/fraud, breach of fiduciary duty, negligent supervision, breach of contract, and violation of the Kansas Consumer Protection Act.

In the instant action, Mid-Continent asserts that the Policy provides no coverage for the claims asserted in the Underlying Lawsuit because those claims fail to allege an "occurrence" or "accident" within the meaning of the Policy.  Mid-Continent further asserts that even assuming the Underlying Lawsuit does allege an occurrence or an accident, the Policy provides no coverage because the Expected or Intended Injury Exclusion, the Contractual Liability Exclusion, the Damage to Real Property Exclusion, the Your Production Exclusion, the Mold Endorsement, and/or the Exterior Insulation and Finish System Endorsement exclude coverage.

---

[1] *See* Mid-Continent's Mem. in Opp'n to Mot. to Stay (doc. 26).

The Policy provides that Mid-Continent "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[2] It further states that the policy applies to "property damage" only if the property damage is caused by an "occurrence."[3] The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[4]

### B. Summary of the Parties' Arguments

Movants urge the Court to stay this declaratory judgment action pending a complete and final resolution of the Underlying Lawsuit. Movants contend that the Underlying Lawsuit involves many of the same factual issues that are raised by Movants in this action and that those factual issues should be decided in the Underlying Litigation. Movants contend that the Underlying Lawsuit will involve a determination of such issues as whether the HOA and homeowners' claims arise out of an occurrence or accident, whether and when the defendants acted negligently, and whether and when GMB and Barnard acted intentionally. Movants contend that these factual issues are best determined by the Johnson County District Court in the Underlying Lawsuit. Movants also argue that a stay "presents a more logical, efficient treatment of the case" because costly discovery will be duplicated if both cases are allowed to proceed simultaneously.[5]

Mid-Continent opposes the stay and argues that the Court should exercise its jurisdiction and allow this action to proceed because "determining the legal questions of insurance coverage in this

---

[2] First Am. Compl. (doc. 18), ¶ 10.

[3] *Id*.

[4] *Id.*, ¶ 11.

[5] Movants' Mem. in Support of Mot. to Stay (doc. 24) at 5.

3

construction defect case will clarify and settle the legal relations" between Mid-Continent and its insureds, GMB and Barnard.[6] It will also end the uncertainty surrounding Mid-Continent's obligation, if any, to defend and indemnify GMB and Barnard in the Underlying Lawsuit.[7] Mid-Continent disputes that the coverage issues in this declaratory judgment action are dependent on resolving the same factual issues involved in the Underlying Lawsuit.

C.      Applicable Law

The decision whether to exercise jurisdiction in a declaratory judgment action is a matter within the sound discretion of the district court.[8] It is well settled, however, that "[a] federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."[9]

The Tenth Circuit, in *State Farm Fire & Casualty Co. v. Mhoon*,[10] set forth five factors that a district court should evaluate in determining whether to exercise jurisdiction over a declaratory judgment action.[11] Those factors are as follows:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of declaratory action

---

[6]Mid-Continent's Mem. in Opp'n to Mot. to Stay (doc. 26) at 4.

[7]*Id*. at 4-5.

[8]*Allstate Property and Cas. Ins. Co. v. Salazar-Castro*, 2009 WL 997157, at *1 (D. Kan. Apr. 14, 2009); *Sprint Corp. v. Aertoel, Ltd.*, No. 99-2547-JWL, 2000 WL 382031, at *2 (D. Kan. Mar. 17, 2000) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

[9]*Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989).

[10]31 F.3d 979 (10th Cir. 1994).

[11]*Allstate*, 2009 WL 997157, at *1 (citing *Mhoon*, 31 F.3d at 983).

4

would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.[12]

**D.    Analysis**

The Court will now proceed to apply the *Mhoon* factors to this case. With respect to the first two factors, the declaratory action would settle the controversy between Mid-Continent and Movants as to insurance coverage and whether Mid-Continent has a duty to defend and indemnify under the Policy. At the same time, however, a decision by this Court will not settle the *complete* legal controversy that exists between the various parties in the Underlying Lawsuit, as there are damages issues and claims asserted in that case that are clearly not at issue in this case.[13] Thus, the first two factors do not favor either side's position.

With respect to the third factor, there is nothing in the record to indicate that this declaratory judgment action is part of any "procedural fencing" game or that the parties are engage in "a race to res judicata." Thus, this factor is neutral.[14]

Application of the fourth factor is more difficult. As noted above, the fourth factor considers "whether use of declaratory action would increase friction between our federal and state courts and

---

[12]*Mhoon*, 31 F.3d at 983; *accord U.S. v. City of Las Cruces,* 289 F.3d 1170, 1187 (10th Cir. 2002).

[13]*See Mid-Continent Casualty v. Se. Kan. Indep. Living Res. Ctr.*, No. 05-4029-RDR, 2005 WL 3240843, at *2 (D. Kan. Nov. 30, 2005) (holding that first two *Mhoon* factors did not weigh in favor of exercising jurisdiction over declaratory judgment action which sought determination that policy excluded coverage of negligent hiring claim for damages arising out of employee's use of vehicle where civil damages action arising from the collision was pending in state court; both actions would require a factual determination of whether employee was acting within the scope of his employment when he operated the vehicle).

[14]*See Allstate*, 2009 WL 997157, at *2 (finding third factor to be "neutral" where the record did not reflect any procedural fencing or a race to res judicata on the insurance company's part).

5

improperly encroach upon state jurisdiction."[15] Movants contend that the coverage issues in this case are dependent on resolving some of the very same factual issues in the Underlying Lawsuit, i.e., whether Plaintiffs' claims for negligence, strict liability, fraud, etc., arose out of an "occurrence" or "accident" and whether and when GMB and Barnard acted negligently or intentionally. Movants maintain that if both courts are allowed to resolve these factual issues, Movants may be subjected to divergent factual findings, which clearly risks increasing friction between this Court and Kansas state courts. Movants also argue that without a stay, they will be subjected to duplicative discovery.

Mid-Continent disagrees and argues that the coverage issues in this case will be determined as a matter of law and will not duplicate any of the factual issues that will be resolved in the Underlying Lawsuit. It asserts that the issue of whether the wrongful acts alleged in the Underlying Lawsuit constitute an accident or occurrence under Mid-Continent's Policy is a question of law, and it cites *Fidelity & Deposit Co. of Maryland v. Hartford Casualty Insurance Co.*[16] and *Lee Builders, Inc. v. Farm Bureau Mutual Insurance Co.*[17] as support for that proposition. In addition, Mid-Continent asserts that Movants are incorrect in stating that the issue of whether GMB or Barnard acted negligently or intentionally is an issue in this declaratory judgment action. Finally, Mid-Continent argues that duplicative discovery is not a legitimate concern because Mid-Continent will consent to the use of any discovery taken in the Underlying Lawsuit in this action and will agree to

---

[15]*Mhoon*, 32 F.3d at 983.

[16]189 F. Supp. 2d 1212 (D. Kan. 2002).

[17]281 Kan 844, 132 P.3d 486 (2006).

6

limit any deposition questioning "to matters only touching on the [Policy], relationships of the parties and coverage issues."[18]

The Court holds that the fourth factor weighs in favor of a stay. The Court agrees with Movants that this Court will be required to decide factual issues that are already pending before the Johnson County District Court. Admittedly, the *ultimate* issue before this Court is a legal one, i.e., whether the Policy provides coverage for the claims asserted in the Underlying Lawsuit. As is set out below, however, in order to determine that ultimate issue the Court will have to make certain important factual determinations.

Mid-Continent's reliance on the *Fidelity* and *Lee Builders* cases is misplaced. Although both cases recognize that the construction and interpretation of an insurance policy is a question of law to be determined by the court,[19] they do not stand for the proposition that this Court may determine whether there was an "occurrence" or an "accident" within the meaning of the Policy without a resolution of the facts at issue in the Underlying Lawsuit. The *Fidelity* action was filed after the underlying lawsuit against a contractor for negligence and breach of contract was resolved. A declaratory judgment was filed in this Court to determine whether the insured's negligent workmanship constituted an "occurrence" within the meaning of the general liability and umbrella policies.[20] Those policies, like the Policy in this case, covered property damage caused by an "occurrence," and the policies defined an "occurrence" as "an accident, including continuous or

---

[18]Mid-Continent's Mem. in Opp'n to Mot. to Stay (doc. 26) at 9.

[19]*Fidelity*, 189 F. Supp. 2d at 1215; *Lee Builders*, 281 Kan at 849.

[20]Fidelity, 189 F. Supp. 2d at 1216.

7

repeated exposure to substantially the same general harmful conditions."[21] The term "accident" was not defined in those policies and is not defined in the Policy at issue in this case.

Because the policies did not define the term "accident," Judge Lungstrum looked to Kansas Law to determine the meaning of that term.[22] He held that the Kansas Supreme Court would find that "the damage that occurs as a result of faulty or negligent workmanship constitutes an 'occurrence' as long as the insured did not intend for the damage to occur."[23] Thus, the Court had to make a factual determination as to whether the insureds had "intended for the damage to occur."[24] To make that determination, the Court examined a declaration of the defendant which stated that it and its subcontractors believed and expected that their work would meet the contract's specification and that they did not intend for their work on the project to be defective.[25] The Court relied on this evidence and the insurance company's inability to provide any contrary evidence in ruling that an "occurrence" within the meaning of the policy had taken place.[26]

*Lee Builders* also involved an insurance coverage dispute where the Court had to determine whether the underlying tort claims fell within the scope of coverage.[27] In that case, the Court was required to determine whether property damage caused by the defendant's alleged use of defective material or defective workmanship was an "occurrence" within the meaning of a general liability

---

[21]*Id*.

[22]*Id*. at 1216-18.

[23]*Id*. at 1218.

[24]*Id.*

[25]*Id*.

[26]*Id*. at 1218-19.

[27]281 Kan. at 846.

8

policy.[28] The Kansas Supreme Court recognized that the first step in determining insurance coverage is to "examine *the facts* of the insured's claim to determine whether the policy insuring agreement makes an initial grant of coverage."[29] The Court held that based on the facts of the case, an "occurrence" within the meaning of the policy had in fact taken place.[30] It ruled that "[t]he damage in the present case is an occurrence . . . because faulty materials and workmanship provided by Lee's subcontractors caused continuous exposure of the Steinberger home to moisture. The moisture in turn caused damage that was both unforeseen and unintended."[31]

Similar factual findings must be made in this case to determine whether an "occurrence" within the meaning of the Policy took place. Thus, even though the ultimate interpretation of the Policy is a legal determination, that determination must be predicated on a resolution of factual issues as to whether Movants intended for the damage to occur. A similar determination must be made to determine whether the "expected or intended" exclusion applies. According to the Amended Complaint, that exclusion applies when property damage is "expected or intended from the standpoint of the insured."[32]

Finally, the Court considers the fifth factor, which is whether there is an alternative remedy that is better or more effective.[33] This factor weighs in favor of a stay. The Underlying Lawsuit will resolve only liability and damages issues; it will not resolve whether there is insurance coverage.

---

[28]*Id*. at 847.

[29]*Id*. at 849 (emphasis added).

[30]*Id.* at 859.

[31]*Id.*

[32]*See* Am. Compl., ¶ 12.

[33]*Mhoon*, 31 F.3d at 983.

9

Thus, the Court cannot say that the Underlying Lawsuit is "an alternative remedy," such that *dismissal* of this case would be appropriate. Movants, however, do not request dismissal but only a stay until the Underlying Lawsuit is resolved.

The Court agrees with Movants that a stay of this case would present a logical and efficient way to handle these two related actions.[34] Allowing the Johnson County District Court to resolve the factual issues would diminish the risk of inconsistent factual findings. Furthermore, it would negate the need for possibly duplicative and costly discovery. Finally, the Court notes that the Tenth Circuit recognized in *Mhoon* that staying rather than dismissing a declaratory judgment action is preferable where the coverage issues would remain to be decided in light of the outcome of the underlying state case.[35]

After weighing these *Mhoon* factors and considering the applicable Tenth Circuit standards, the Court determines that it should refrain from entertaining this declaratory judgment at the present time and stay the proceedings pending resolution of the underlying lawsuit. The Court therefore grants the Motion to Stay. All proceedings in this action are hereby stayed pending a complete and final resolution the Underlying Lawsuit. In addition, the Scheduling Order (doc. 14), and all deadlines and settings contained therein, is vacated.

## II. Motion to Amend Scheduling Order

In light of the Court's Order granting the Motion to Stay and vacating the Scheduling Order, the Motion to Amend Scheduling Order is moot.

---

[34]*See Allstate*, 2009 WL 997157, at *3 (holding that stay of declaratory judgment action until state tort action resolved "would present a more logical, efficient treatment of the case" and would allow the state court to determine factual issues needed to resolve coverage issues).

[35]31 F.3d at 984.

**IT IS THEREFORE ORDERED** that Defendant Greater Midwest Builders, LTD, and Dan Barnard's Motion to Stay (doc. 23) is granted, and all proceedings in this action are stayed pending resolution of the lawsuit filed in the District Court of Johnson County, Kansas, captioned *The Village at Deer Creek Homeowners Association, Inc., et al. v. Greater Midwest Builders, LTD, et al.*, Case No. 07-CV-10282.

**IT IS FURTHER ORDERED** that the Scheduling Order (doc. 14), including all deadlines and settings contained therein, is vacated.

**IT IS FURTHER ORDERED** that Defendant Greater Midwest Builders, LTD, and Dan Barnard's Motion to Amend the Scheduling Order (doc. 32) is moot.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 13th day of October 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:   All counsel and *pro se* parties